STATE ex rel. PAYNE v. SCHOOL DIST. No. 97 et al.

97 P. 2d 548.

No. 28931.   Dec. 12, 1939.

Suits & Lewis, of Oklahoma City, for plaintiff in error.

Cruce, Satterfield & Grigsby, of Oklahoma City, for defendants in error.

DAVISON, J.   This cause is presented on appeal from the district court of Blaine county, Okla. It was instituted on May 18, 1933, in the name of the state of Oklahoma by Thomas J. Payne, as a resident taxpayer of school district No. 97 of Blaine county, against members and ex-members of the school board of that district, to recover the sum of $9,547.36, representing d o u b l e  the amount of school district funds alleged to have been illegally expended by the board.   The school district was also named as a party defendant.

Numerous individual items of alleged illegal expenditures of money were incorporated in the petition.   Under the rules of law which govern the disposition of this appeal, a detailed review in this opinion of the various items or the evidence offered on the trial of the case in connection therewith is unwarranted. It may be observed in passing that the items include the alleged payment of teachers' salaries in order to maintain the district school for its scheduled term after the appropriation for that purpose had been exhausted and the asserted payment of claims for supplies, etc., used in connection with the maintenance of the school without the previous filing of claims in proper form.

The basis of plaintiff's action is sections 6831, 6832, O. S. 1931 (70 Okla. St. Ann. § § 132, 133).   Section 6831, supra, describes the basis and extent of liability of school district officers, and section 6832, supra, prescribes the conditions upon which a resident taxpayer may institute and maintain an action to enforce the liability.   The latter section contemplates that before the action may be instituted, a written demand, signed by ten resident taxpayers, must be made upon the proper officers of the school district and the officers must have failed, refused, or neglected to "institute or diligently prosecute" an appropriate action.

The defendants, among other defenses, asserted that the foregoing statutory prerequisites are essential and in important respects nonexistent in this case. They assert that they were not guilty of refusal, failure, or neglect to act because the written demand served upon them was, in effect, withdrawn before there had been any refusal on their part to act and before sufficient time had elapsed for them to be charged with failure or neglect to act.

On the trial of this cause this theory of

defense, among others, was submitted to the jury, which by its verdict found for the defendants.

The facts upon which this defense is based are as follows: On May 2, 1933, a written demand, the legal sufficiency of which may be assumed, signed by eleven resident taxpayers, including the relator herein, was served on the defendant school district officers. May 2, 1933, was on Tuesday. On the following Saturday a "round table" discussion of the matters comprehended by the demand was had between the school board members and some six or seven of the people who signed the demand. On the following Monday, May 8th, three of the signers presented to the board an instrument by which they formally withdrew from the demand presented, thus leaving only eight undisturbed signatures on the demand—two less than the minimum requirement of the statute (sec. 6832, supra). During the five days (four days excluding Sunday) which intervened between the presentation of the demand and the withdrawal by three signers thereof, there was no refusal on the part of the defendant officers to act on the demand, and they assert that the lapse of time was insufficient to authorize a conclusion that they were guilty of failure or neglect in the matter. They take the position that they were entitled under the law to a reasonable time in which to act, and a portion of the signers having withdrawn before the expiration of that time, they were not thereafter charged with the duty of acting under the provisions of section 6832, supra. The plaintiff, on the other hand, takes the position that withdrawal from the demand after it had been filed was impossible as a matter of law and ineffective for any purpose. The trial court adopted the view of the defendants, but concluded the question of whether a reasonable time for acting had expired before the withdrawal was one of fact for the jury. An appropriate instruction upon the point was accordingly given, and by its general verdict (which is deemed to comprehend a special finding upon this issue favorable to the defendants) the jury found that a

reasonable time for action had not expired prior to the withdrawal by the three signers. The decision on this question of fact is not open for successful challenge on this appeal.

The question of law to be decided is whether one who has signed a written demand as contemplated by section 6832, supra, may, before any action has been taken thereon and before a reasonable time for action has expired, withdraw from the demand. This precise question does not seem to have been previously decided by this court; however, analogous problems have confronted us and our solution thereof guides our reasoning in the determination of this controversy.

The written demand contemplated by section 6832, supra, is in the nature of a petition, which is a method frequently prescribed by statute for bringing about some action or decision on the part of a public official. Section 1, ch. 186, Session Laws 1919 (sec. 6915, O. S. 1931, 70 Okla. St. Ann. § 251), contemplates a special meeting of voters to pass upon the question of consolidation of adjacent school districts, and requires the calling of such meeting "upon petition of one-half of the legal voters." No authority is given by the statute to withdraw a signature from such a petition. But this court, in School District No. 24 of Custer Co. v. Renick, Co. Supt., 83 Okla. 158, 201 P. 241, held that a voter could withdraw his name from such petition at any time before it had been acted upon. In paragraph 2 of the syllabus, we said:

"A qualified voter signing such petition has the absolute right to withdraw his name from such petition *at any time before* the petition is acted upon and the election called by the county superintendent. Upon such name being withdrawn from the petition, it cannot thereafter be counted as one of the signers of said petition to make up the requisite number of one-half of the legal voters residing in such district." (Emphasis ours.)

To the same effect, see Mills et al. v. Lynch, County Supt., et al., 121 Okla. 101, 247 P. 981. Upon similar considerations,

we held in the case of In re Initiative Petition No. 2, City of Chandler, 170 Okla. 507, 41 P. 2d 101, that a citizen could withdraw from an initiative petition requesting the revocation of a charter. In the body of the opinion in that case, we said:

"But this court is committed to the doctrine, in the absence of statute, which permits withdrawal after filing a petition and before action thereon is taken. * * *

"To absolutely prohibit a citizen from withdrawing his name from a petition voluntarily signed by him, at any time after it has been filed, but before action is had either on the sufficiency of the petition or *on the relief sought by the petition,* would be a harsh and unreasonable rule. * * *"" (Emphasis ours.)

The plaintiff contends that the foregoing case, and the principles therein recognized and adopted, should not apply to the case at bar upon consideration of State ex rel. Sheel v. Ingram et al., 164 Okla. 244, 23 P. 2d 648, and Baugh v. Little et al., 140 Okla. 206, 282 P. 459. Neither of those cases dealt with the right of one who had joined in a demand to withdraw therefrom, or the effect of such withdrawal after the same has been made. They are not in point on this question.

We are of the opinion that the demand contemplated by section 6832, is in the nature of a petition. It is calculated to procure the institution of an action in behalf of the school district by its officers, or, in the alternative, if such officers refuse, fail, or neglect to act, an action by a resident taxpayer which may be of a penal nature.

Obviously, if there is no refusal, the officers cannot be charged with neglect or failure if they do not act immediately, especially where, as in this case, numerous transactions are involved and some time for investigation would be required in order to ascertain the merits of the demand. We are of the opinion, as was the trial court, that they were entitled to a reasonable time.

The plaintiff is of the opinion that the demand required is merely to challenge the attention of the officers to the irregularities complained of, and that thereafter the liability and penalties imposed by the statute are absolute, subject to being defeated only by the institution of the action. If this had been the legislative intent, there was no rational reason for requiring the concurrent action of ten resident taxpayers. This provision of the statute is indicative of a restrictive intent on the part of the Legislature. It argues strongly that if the contemplated action is not meritorious enough to command the support of at least ten interested persons, the penalties and liabilities imposed by the statute are not available. It is quite possible that individuals may, as in this case, after having joined in a demand, decide, upon more deliberate reflection, that the action was ill advised. If so, it is difficult to perceive any rational reason why such withdrawal should not be permitted; that is, of course, if the withdrawal is prior to action on the demand and prior to the expiration of a reasonable time in which to act.

That such privilege should be accorded, harmonizes with the apparent legislative intent and with the principles previously enunciated by this court.

Since this constitutes a separate and complete defense upon which the jury found for the defendants, the judgment of the trial court will be affirmed.

BAYLESS, C. J., and RILEY, GIBSON, HURST, and DANNER, JJ., concur. WELCH, V. C. J., and OSBORN and CORN, JJ., dissent.

---

WELCH, V. C. J. (dissenting). The majority opinion bases its determination of this important case on the declared principle that after due written demand has been served on public officers to act under sections 5964 and 5965, O. S. 1931, 62 Okla. St. Ann. § § 372 and 373, the duty to so act thereafter may be measured by the subsequent desires or continuing wishes of one or more of the taxpayers who signed the original demand.

I think it unsound to base the determination upon a thought or question so non-essential as the question of the subsequent or continuing attitude of some of those who originally made the demand.

I think something more nearly approaching the merits of the case should be considered and passed upon. Let me make it plain that I do not assert that these named defendants are guilty of the unlawful and fraudulent expenditure of school district funds, as alleged in plaintiff's petition. But if they are guilty, they should make restitution, and if they are entitled to be exonerated on the facts, that should be done.

The rules established by former decisions of this court would surely furnish ample grounds for the excuse or justification of public expenditures, where there is any reason for such excuse or justification, without any enlargement of those rules, or the setting up of any other or new obstacles to the recovery of public moneys wrongfully paid out. I agree, of course, that this penalty statute must be strictly construed, and we have so held in numerous decisions. State ex rel. Shilling v. Okla. City et al., 67 Okla. 18, 168 P. 227; State ex rel. Estill v. Board of Commissioners et al., 119 Okla. 215, 249 P. 394; Vaughn v. Latta, 168 Okla. 492, 33 P. 2d 795, and Dowler v. State, 179 Okla. 532, 66 P. 2d 1081. (See, also, the other cases cited in these decisions.)

And we have held that the demand, when served upon the officers, must be in complete and strict compliance with the act so that if less than ten signers are taxpayers, or less than ten are residents, or if for any other reason the demand is not complete and sufficient when served, that there is essential noncompliance with the statute. But we have never before held that all this sufficiency of the demand must remain constant and be maintained until compliance with the demand by the public officials, and such is not required of the demand by the statute. In fact, the demand is one of the conditions precedent to filing the taxpayer's action, as we held in the above cited cases. It has served its purpose when it is delivered to and served upon the officials. And if thereafter one of the ten signers should die or cease to become a taxpayer or by removal cease to be a resident, that would not excuse the public board from acting, or protect them from suit for failure to act. It has never been held or contended otherwise so far as I know.

When a demand by ten taxpayers is properly served upon the school board under the above section, the performance by the school board which will protect the members thereof from a penalty action is twofold: First, to institute an action for recovery of the public funds themselves, and second, to diligently prosecute such action.

The second portion of performance is just as essentially important as the first. For if such a suit is filed by the board and thereafter is not diligently prosecuted, then it might well be as barren of result as if no suit had ever been filed, and this could be true even if the school district and the school board had a meritorious right to recover back money unlawfully expended.

If the demand which is in all things sufficient when served upon the board may be remeasured for some insufficiency prior to instituting action by the board, then, after the board had started suit, it would be insisted that the board could also test the demand for insufficiency at any time during the pendency of such suit, and could excuse their lack of diligence in prosecuting the action by showing some subsequent loss of force of the demand by reason of change in attitude of one or more of the demanding taxpayers as in this case, or by death, or removal of residence, or because one or more of them ceased to become taxpayers.

The majority opinion holds in effect that the demand must not only be good and sufficient when it is served, but in effect holds also that the demand must remain in all respects sufficient until complied with or the lapse of a reasonable time for compliance. That is, that

during such time, whatever it may be in the particular case, the ten taxpaying signers must continue to live, and dwell in the same territory, and continue to be taxpayers, and also must continue of the same attitude and mind as when they signed the demand. I cannot agree that such represents the legislative intent nor that any such thought is stated in or implied by the provisions of the act.

I think the authorities cited in the majority opinion are wholly inapplicable. They relate to petitions and matters where action may only be taken upon authority of the petition. In these matters in this case the school board always has the authority, without any taxpayer's demand, to sue for the recovery of public money unlawfully expended. If they bring such a suit after being served with written demand, they do not bring the suit by authority of the demand, but by authority already possessed. The purpose of the demand is to call the matter to the attention of the board in the manner provided by statute, and to advise them of the possibility of penalty if they continue to fail to both sue for recovery of the money and diligently prosecute such action. The theory of the demand is that the board already had the authority to so proceed and had failed to do so theretofore. While in the cases cited and relied on in the majority opinion there was no power to take the desired action except after the petition was filed, and then the action was taken upon the petition. It is logical in such case to say that, since the action could only be taken upon a complete and valid petition, the same must remain complete until the action was taken. Otherwise, the action when taken would be without authority.

Even if we have the authority, which I doubt, I see neither occasion, necessity, nor advisibility of approving and creating by this decision a new defense for officers when sued for unlawful and fraudulent expenditure of public funds; that is, the defense that they have been able to procure the withdrawal of some one or more signers from the original statutory demand. The approval and thereby the creation of such a new defense is definitely encompassed in the majority opinion, and I think it is therefore wholly unsound.