### STATE ex rel. MITCHELL v. CITY OF SHAWNEE et al.

No. 22351. March 27, 1934.

Rehearing Denied April 10, 1934.

A. M. Baldwin and Welty, Harrison & La Fon, for plaintiff in error.

Arrington & Evans, Fred M. Carter, Edward H. Chandler, William O'Beall, Stanard & Carey, F. H. Reily, Goode, Dierker & Goode, Thompson, Mitchell, Thompson & Young, Joe T. Dickerson, Burford, Miley, Hoffman & Burford, W. P. Z. German, and Blakeney & Ambrister, for defendants in error.

McNEILL, J. This action is in the nature of a common-law qui tam action. It was instituted by S. B. Mitchell, an informer, to recover a penalty amounting to $97,500 for the city of Shawnee as well as for himself by virtue of sections 5964 and 5965, O. S. 1931 (sections 8590 and 8591, C. O. S. 1921).

Section 5965, supra, when construed in connection with section 5964, O. S. 1931, provides, in substance, that where money has been paid out or transferred by any officer of a municipal corporation in pursuance of any fraudulent or void contract, and a written demand has been made by ten resident taxpayers of such city to institute or diligently prosecute an action for the recovery of said money, and when such officers fail to comply with such demand, then any resident taxpayer of the municipality may bring an action to recover as a penalty double the amount of money so paid out or transferred.

Plaintiff bases the action upon an alleged collusive agreement made by the officers and agents of the city of Shawnee in the settlement of a suit which had been brought by

said city in the district court of Pottawatomie county against a number of major oil companies for the pollution of the water supply of said city. That action was filed December 21, 1929. The city of Shawnee sought to recover actual damages in the sum of $1,000,000, and $500,000 as exemplary damages.

Plaintiff in his second amended petition alleges, in substance, that the officers and agents of the city of Shawnee settled said suit with said major oil companies for the sum of $100,000; and in furtherance of a fraudulent and collusive agreement caused a judgment in said action instituted by said city to be entered for the sum of $2,500, when said judgment should have been for the sum of $100,000, for the purpose of transferring to the Shawnee Water Association, one of the defendants herein, the sum of $97,500; that all of said defendants agreed that said $97,500 should be transferred to said defendant Shawnee Water Association; and that this constituted a fraud practiced upon the court and upon the resident taxpayers of said city, whereby the city of Shawnee and the taxpayers were defrauded in the sum of $97,500.

The second amended petition appears, in substance, except for variations of phraseology, to be the same as the original and first amended petitions. Plaintiff, however, does not attach to or make reference in his second amended petition to any of the exhibits attached to and made a part of his former petitions.

The several demurrers of the defendants to the first amended petition were sustained, and thereafter the defendants joined in a motion to strike the second amended petition. This motion is as follows:

"1. That the cause of action set forth in the second amended petition is identical with the claim set forth in the first amended petition and to which the court sustained a demurrer.

"2. Because the facts set forth in plaintiff's second amended petition are identical with those set forth in plaintiff's first amended petition except that the plaintiff has omitted to refer to and make a part of the second amended petition certain exhibits which were attached to and made a part of the first amended petition and which exhibits constitute and are the basis upon which plaintiff predicates his alleged cause of action, and the court having sustained demurrers of the several defendants to said first amended petition, plaintiff should not now be permitted to further prosecute this action when the exhibits attached to the first

amended petition and now on file in this cause show that the plaintiff has no cause of action.

"3. Because there are no facts alleged or issues of law or fact tendered in the second amended petition which were not in the first amended petition heretofore held by the court to be insufficient to constitute a cause of action in favor of plaintiff.

"4. Because there is not a material statement or allegation contained in the second amended petition which was not in the first amended petition, and it is therefore apparent that plaintiff's second amended petition is frivolous, without merit and not filed in good faith.

"5. Because it clearly appears that by his failure to attach said exhibits to the second amended petition, or make the same a part thereof by reference, plaintiff is attempting to avoid the legal force and effect of the exhibits attached to the first amended petition, now a part of the record in this cause.

"6. Because the second amended petition is substantially a repetition of the first amended petition which the court has heretofore held to be insufficient to constitute a cause of action in favor of plaintiff."

After a hearing, the trial court sustained said motion to strike. Plaintiff excepted to said ruling, refused to plead further, and elected to stand upon his second amended petition; whereupon, on motion of the defendants, the suit of plaintiff was dismissed. From this order of dismissal, the appeal has been prosecuted.

Defendants urge that the second amended petition avoids the force and effect of the exhibits theretofore attached to the first amended petition, which included the agreement entered into on February 6, 1930, between the Shawnee Water Association and said oil companies whereby said oil companies agreed to loan to the Shawnee Water Association $25,000 in cash and pipe of the approximate value of $70,000 to $75,000, which money was to be repaid and the pipe returned or the value thereof as provided by the terms of said agreement.

Plaintiff died while the action was pending in this court. A motion to revive in the name of the administrator of the estate of said plaintiff, deceased, was filed in this court, and over the objection of defendants, an order of revivor was made without prejudice to reconsideration of this question on the merits.

As we view the questions herein presented, we hold that this action abated at the death of the plaintiff.

The action instituted is to recover a statutory penalty. See State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 P. 796; State ex rel. Schilling v. Oklahoma City, 67 Okla. 18, 168 P. 227; Dorsett et al. v. State, 144 Okla. 33, 289 P. 298; State ex rel. Gooch v. Drumright et al., 88 Okla. 244, 212 P. 991; Territory ex rel. v. Woolsey, 35 Okla. 545, 130 P. 934; State ex rel. Sheel v. Ingram, 164 Okla. 244, 23 P. (2d) 648.

The right of action at bar is purely statutory. The recovery which is sought is not to compensate for a wrong to plaintiff, but by reason of the fact that there has been an alleged contemptuous and intentional neglect, refusal, failure, or disregard on the part of the defendants for a breach of the law. See Mitchell v. Hotchkiss, 48 Conn. 9; Diversey v. Smith, 103 Ill. 378; Willis v. Byrne, Adm'r, 106 Ala. 425.

In the case of Sullivan v. Associated Billposters and Distributors of the United States and Canada, 6 Fed. (2d) 1000, 42 A. L. R. 503, 509, it is said:

"It was a rule of the common law that most causes of action based on contract survived while most of those founded on tort abated. But the rule was subject to various exceptions. The real test, so far as tort actions were concerned, seems to have been whether the injury on which the cause of action was based affected property rights, or affected the person alone. In the former case the cause of action survived, while in the latter it abated. See 21 Enc. Pl. & Pr. 31. The common-law rule, as laid down in 3 Bl. Com. 302, is as follows:

" '* * * The death of either party is at once an abatement of the suit. And in actions merely personal, arising ex delicto (from wrong done), for wrongs actually done or committed by the defendant, as trespass, battery, and slander, the rule is that actio personalis moritur cum persona (a personal action dies with the person); and it shall never be revived either by or against the executors or other representatives. For neither the executors of the plaintiff have received, nor those of the defendant have committed, in their own personal capacity, any manner of wrong or injury'."

The right of action for a penalty is clearly personal, and nonassignable. See Cowan v. Campbell, Adm'r (Ky.) 17 B. Monroe, 522, 66 Am. Dec. 184; Wilson v. Shrader, 73 W. Va. 105, 79 S. E. 1083. And, being nonassignable, it was not survivable at common law. City of Milwaukee v. Boynton Cab Co. et al., 201 Wis. 581, 231 N. W. 597. Assignability and survivability of causes of action are as a general rule convertible terms. Wilcox v. Bierd, 330 Ill. 571, 162 N. E. 170.

Penal statutes are to be strictly construed from the standpoint of the alleged wrongdoer. See Western Mtg. & G. Co. v. Gray (Cal.) 8 P. (2d) 1016; Moss v. Smith (Cal.) 155 P. 90.

It was the common-law rule that actions, qui tam, on penal statutes, being classified as actions ex delicto, sounding in tort, by reason of the wrong incurred by the tortfeasor, came within the class of actions which abated by death and did not survive. Schreiber v. Sharpless, 110 U. S. 76. The action at bar would not survive at common law. Van Choate v. General Electric Co., 245 Fed. 120.

The question arises whether the instant action comes within that class of actions or causes of action which survive the death of the plaintiff by reason of sections 822 and 823, C. O. S. 1921, regulating in part the survival and revivor of actions. In construing these sections of the statute, we must also consider the intent and purpose of the Legislature evidenced by sections 826 and 827, C. O. S. 1921, and the various other sections relating to the survival and revivor of actions.

For the purpose of clarifying the legislative intent in enacting aforesaid sections of our statutes relating to survival and revivor of actions, we find in Statutes at Large, vol. 92, 15-16 Victoriae, containing the statutes passed in the Fifth Session of the Fifteenth Parliament of the United Kingdom of Great Britain and Ireland, chapter 76, entitled: "An act to amend the process, practice, and mode of pleading in the superior courts of common law at Westminster, and in the superior courts of the counties of Palatine, Lancaster, and Durnham [June 30, 1852]," which was subsequent to the Lord Campbell Act, 1846, relating to an action for death by wrongful act, the following:

"Whereas the process, practice and mode of pleading in the superior courts of common law at Westminster may be rendered more simple and speedy. * * *

"And with respect to the effect of death, marriage and bankruptcy upon the proceedings in an action, be it enacted as follows:

"CXXXV. The death of a plaintiff or defendant shall not cause the action to abate, but it may be continued as hereinafter mentioned.

"CXXXVI. If there be two or more plaintiffs or defendants, and one or more of them should die, if the cause of such action shall survive to the surviving plaintiff or plaintiffs, or against the surviving defendant or defendants, the action shall not be thereby abated; but such death being suggested up-

on the record, the action shall proceed at the suit of the surviving plaintiff or plaintiffs against the surviving defendant or defendants.

"CXXXVII. In case of the death of a sole plaintiff or sole surviving plaintiff, the legal representative of such plaintiff may, by leave of the court or a judge, enter a suggestion of the death, and that he is such legal representative, and the action shall thereupon proceed. * * *"

In the case of Flynn v. Perkins, Jurist Reports, 1862, New Series, vol. 8, part 1, at page 1177, it was said:

"This was a rule calling upon the defendant to show cause why a suggestion of the death of the plaintiff should not be entered upon the record, and that John Flynn was his legal representative, and why the action should not thereupon proceed. The action was brought by Daniel Flynn, a minor, suing by John Flynn, as his next friend, for a personal injury alleged to have been occasioned by the negligence of the defendant. At the trial of the cause, at the last Spring Assizes for Cornwall, the jury were unable to agree, and were discharged without giving a verdict. Daniel Flynn subsequently died, and letters of administration had been granted to his father, John Flynn.

"Karslake shewed cause,—The maxim 'actio personalis moritur cum persona' applies. The personal representative could not have sued at common law, and the Common-Law Procedure Act, 1852, does not enable him to continue the action; the 135th, 136th, and 137th sections apply to procedure only, and do not give a new cause of action. It was simply intended to enable persons in whom the right of action would vest to continue the action without a fresh writ. (He cited Broom's Maxims, 702.) * * *

"Campton, J. I think the statute does not apply to cases like the present. It seems to me that the sections apply to the form of proceeding only, the object being to continue the action, when the right of action survives the death of the plaintiff, without issuing a fresh writ for the same cause of action. The 136th section shows that where an action would survive, and would be vested in a survivor, it may be continued; and so the 137th section refers to a legal representative to whom the right of action would pass. The intention was not to give a new right of action, but that where a representative could have put himself in the same position as the plaintiff, he might do so by continuing the original proceeding. It would be a strong thing to say that this statute has repealed the common-law maxim. This could never have been the intention of the Legislature, and the rule, therefore, will be discharged, but I think, under the circumstances, without any costs.—Rule discharged accordingly."

The Supreme Court of Maryland, in the case of B. & O. Railroad Co. v. Ritchie, 31 Md. 191 (1869), held in consonance with these views in determining whether an action to recover damages for personal injuries by reason of the negligence of railroad company died with the original plaintiff. That court said:

"We think it perfectly clear, however, that the suit, so far as the injury to the person of the plaintiff was involved, abated without a plea in abatement, and that the appellant could have taken advantage of it by asking the instruction of the court. Suits for injuries to the person or character die with the person, and cannot be maintained by the representatives of the deceased party. Before the Acts of 1785, chap. 80, and 1798, chap. 101, subchap. 13, sec. 4, all personal actions abated by the death of a party, and it was necessary for his representatives to commence the action anew; and the object of those acts was to prevent this inconvenience and delay, and to enable the representatives of deceased parties to prosecute such actions as had been instituted by their decedents, during their lives, and which did not die with the person.

"These acts never were intended, however, to prevent the abatement of actions, which died with the person."

The Supreme Court of Ohio, in a very well-reasoned case, Chilcote v. Hoffman, 119 N. E. 364, L. R. A. 1918D, p. 575, considered the identical sections, 822 and 823, supra, in construing a will contest as to whether the right to contest a will, where the contestant died pending the proceedings, would be a cause of action which would survive. In that case the will of decedent was admitted to probate. The decedent left surviving him a widow and seven children. One of the children of said decedent, Anna Chilcote, after the probate of said will, died intestate, leaving surviving her, her husband and two minor children. After her death the probate court appointed her husband as guardian of said minors, and thereafter said guardian of said minors filed a petition in the common pleas court alleging that the will admitted to probate was not the last will and testament of said decedent, and prayed that the same be set aside and held for naught. It was therein contended that the children of said decedent, Anna Chilcote, had no right to commence an action to contest said will, upon the theory that the right to contest a will does not survive the death of the persons entitled to bring such an action.

In that case, in part, it was said:

"Section 11235, General Code, provides that:

" 'In addition to the causes which survive at common law, (the) causes of action for mesne profits, or injuries to the person or property, or for deceit or fraud, also shall survive; and the action may be brought notwithstanding the death of the person entitled or liable thereto.'

"In construing this statute the court of appeals said, in its opinion in this case:

" 'A will contest is a proceeding unknown to the common law, and the right could not therefore be a cause of action which would survive at common law.'

"It is wholly unimportant whether a will contest is or is not a proceeding unknown to the common law, for the principles of the common law readily adapt themselves to the changing nature of human affairs. Flandermeyer v. Cooper, 85 Ohio, St. 327, 40 L. R. A. (N. S.) 360, 98 N. E. 102, Ann. Cas. 1913A, 983.

"The language of section 11235, General Code, is sufficiently clear and comprehensive to include all causes of action that survived under the rules and the principles of the common law, regardless of the fact that the common law court was not the forum in which to bring such action. Under the rule of the common law, the only causes of action that do not survive the death of either party are causes of action ex delicto. The right to contest a will is not a cause of action ex delicto, but comes clearly within the class that survives the death of either party, under the rule and the reason of the common law.

"If there were any doubt whatever as to the proper construction of section 11235, General Code, that doubt is wholly removed by section 11397, General Code, which provides that:

" 'Unless otherwise provided, no action or proceeding pending in any court shall abate by the death of either or both of the parties thereto, except actions for libel, slander, malicious prosecution, (or) for a nuisance, or against a justice of the peace for misconduct in office, which shall abate by the death of either party.'

"At common law all pending actions abated by the death of either party, regardless of the fact that the cause of action might survive. Where the cause of action did survive, it was necessary to bring a new action.

"The purpose of this section of our Code is to prevent the useless annoyance, delay, cost, and expense of bringing a new action where the cause of action survives. Certainly it was not the legislative intent that a pending action should not abate by the death of a party, where the cause of action does not survive his death. Such a construction would render the statute ridiculous.

A pending action cannot survive the cause of action upon which the action itself is predicated.

"Under the clear and unambiguous provisions of this section, if Anna Chilcote in her lifetime had commenced an action to contest this will, or such action had been commenced by some other interested person and was pending at the time of her death, it would not have abated by reason of her death, but could have been revived, as provided in section 11402, General Code, in the name of her personal representative or successor in interest. If the cause of action did not survive Anna Chilcote, a revivor of the pending action would be a vain and useless performance, and the statute providing that such an action shall not abate by the death of either party, a colossal legislative blunder."

We are of the opinion that this decision properly determines the question at bar. In case of City of Shawnee v. Cheek, 41 Okla. 227, 137 P. 724, Commissioner Thacker, in writing the opinion for this court, makes the observation that these sections were adopted from the state of Kansas. That may not be conclusive. The aforesaid sections of our statutes are identical with those quoted from the state of Ohio. We may reasonably infer that Kansas adopted those sections, quoted in the Chilcote Case, supra, from Ohio, and we in turn adopted them from Kansas. Sections 11235 and 11397, General Code of Ohio, are essentially the same as sections 822 and 823, C. O. S. 1921.

In the Cheek Case, supra, an action was instituted for wrongful death of a deceased minor child by the father. Subsequently the father died and the action was revived in the name of the mother of the deceased child. It was urged in that case that the cause of action by the statute given to the father as next of kin of said deceased child expired upon the death of said father about ten months after the death of the child. The court held that the action originally begun by the father of said deceased child was, upon the death of the father, properly revived in the name of the mother as administratrix of the estate of said deceased child, upon a stipulation signed and filed, whereby it was agreed and consented to that the action be revived in the name of Fannie W. Cheek, administratrix of the estate of James Cheek, deceased. Commissioner Thacker, in that case, in considering the contention of the defendant that the right of action for the death of said deceased child was personal and expired with the original plaintiff, the father of the decedent, and that said action was not susceptible of revivor for the reason that it

did not exist after the death of the original plaintiff, quotes from the aforesaid sections 822 and 823, C. O. S. 1921, supra, as follows:

"But we do not understand this section (823) to impart the quality of survivability to causes of action which do not have that quality under the next preceding section (section 4311, Stat. Okla. 1893, same being section 5279, Rev. Laws 1910) (822), supra, which reads:

"'In addition to the causes of action which survive at common law, causes of action for mesne profits, or for an injury to the person, or to real or personal estate, or for any deceit or fraud, shall also survive; and the action may be brought, notwithstanding the death of the person entitled or liable to the same.' * * *

"Section 4311, supra, however, apparently stamps with the quality of survivability every cause of action which would survive at common law. * * *"

We conclude that this is the correct interpretation to be given to sections 822 and 823, supra. If the action survives at common law, and also comes within the additional causes of action set forth in section 822, supra, such action is vested with the right of revivor, and does not abate upon the death of either parties plaintiff or defendant, solely by reason of section 823, supra; but if the action does not survive at common law, and does not fall within the causes of action set forth in section 822, supra, it abates upon the death of the plaintiff. Under the common law, if an action did survive, it became necessary to bring a new action. Section 823 is strictly remedial and procedural and enacted to avoid the necessity of commencing a new action. It seems apparent that it never was the Legislature's intention to provide that an action should continue after the death of a party when the right of action or cause of action would not survive at common law, except as otherwise provided for in section 822, supra. To construe otherwise would be, in the language of the Supreme Court of Ohio, in the Chilcote Case, supra, "a colossal legislative blunder."

In this case no contention is made that the penal statutes involved herein provide for any assignment of the cause of action, or that any provision has been made therein for the survival of such a cause of action. Actions of this nature must be strictly and rigidly construed in behalf of the wrongdoer, and the liberal rule of interpretation and implication does not prevail. Plaintiff sought to recover this penalty for the city of Shawnee as well as for himself, and not for others similarly situated. The action was available to any resident taxpayer following the aforesaid statutory provisions, but clearly so, not otherwise. Other taxpayers could have been joined as plaintiffs. In such a case the action could have proceeded as to them. At the death of plaintiff, the cause of action was extinguished as to plaintiff. The right of revivor did not exist.

In the case of Baugh v. Little, 140 Okla. 206, 282 P. 459, an action was instituted by a resident taxpayer pursuant to the provisions of sections 10383 and 10384, C. O. S. 1921, to recover penalty for illegal expenditures of school funds, wherein it was provided that such resident taxpayer of such school district might institute and maintain an action for the recovery of said penalty. This court held that it was essential that the plaintiff retain his status as such resident taxpayer. In that case it appears that the plaintiff instituting the action had removed from the school district, and this court held that it was not error for the trial court to dismiss the action as in abatement for want of a proper party plaintiff capable to proceed therein to a final judgment for the recovery of such penalty. We think the reasoning in that case applicable in the instant case. The applicable sections of the statute at bar provide that the resident taxpayer "may, in the name of the state of Oklahoma, as plaintiff, institute and maintain any proper action which the proper officers of the * * * city * * * might institute and maintain * * * for said penalty."

We conclude that an action or a cause of action for recovery of penalty under a statute should be strictly construed, and that, under the facts in the instant case, the action abated upon the death of the plaintiff, and that such action did not survive and was not properly revivable. In arriving at this conclusion, we are not unmindful of holdings to the contrary. See Powers v. Sumbler, 83 Kan. 1, 110 P. 97. This case cites no authorities on this question. Also Frampton v. Santa Fe Northwestern Ry. Co. (N. M.) 287 P. 694. Having thus concluded, it is not needful to consider this case on the merits.

The objections to the order of revivor entered by this court are sustained, and the cause is remanded, with directions to enter an order of abatement and dismissal as to plaintiff.

SWINDALL, ANDREWS, OSBORN,

BAYLESS, BUSBY, and WELCH, JJ., concur.